## FEDERAL LAND BANK OF HOUSTON v. MILES NAT. FARM LOAN ASS'N.

### No. 10747.

Circuit Court of Appeals, Fifth Circuit.

Dec. 8, 1943.

Dan Moody, of Austin, Tex., and H. A. Berry, Lewis Rogers, and William N. Stokes, Jr., all of Houston, Tex., for appellant.

A. K. Doss, of Abilene, Tex., and Scott Snodgrass, of San Angelo, Tex., for appellee.

T. H. Hedgepeth, of New Orleans, La., and Harry D. Reed, of Columbia, S.C., for appellant as amicus curiae.

Before SIBLEY, HOLMES, and WALLER, Circuit Judges.

SIBLEY, Circuit Judge.

Appellant and appellee are corporations of the kind indicated by their respective names, organized under the Farm Loan Act of July 17, 1916, as amended, 12 U.S.C.A. § 641 and following. At the suit of the Association the District Court enjoined the Bank, its agents and employees, "from interfering in any manner with Miles National Farm Loan Association in its collection and servicing of any loans made through the Miles National Farm Loan Association", but provided the Bank might take such action as it considered proper in connection with the foreclosure of delinquent loans, and might "look into" the servicing.

The injunction appears on its face too indefinite, 32 C.J., Injunctions, § 629(2), and probably too broad under the rule announced in New York, N. H. & H. R. Co. v. Interstate Commerce Commission, 200 U. S. 361, 26 S.Ct. 272, 50 L.Ed. 515. But confining it to the particular conduct complained of, we enquire whether that conduct violates any right of the Association.

Both corporations were organized in 1917. Many farm loans were made by the Bank through the Association, all guaranteed or indorsed by the Association, and for twenty-five years serviced and collected by the Association under written contracts with the Bank which provided a compensation to the Association. Though the Association was solvent and found by the court to have been diligent and efficient, the Bank, asserting dissatisfaction with the service, and a refusal of the Association to secure better service by grouping itself with an adjoining association, revoked its contract with the Association in November, 1942, and sent its own representative into the territory to look after the loans, some of which were in default, and advised the borrowers to make no further payments to the Association, but to pay this representative.

The contract between the Bank and the Association, authorizing the Association to collect for the Bank, was by its terms revocable at will. No right under it is claimed. But the Association asserts that without a contract it has the exclusive right to make collections and otherwise service the loans of its members on which it is liable as guarantor and indorser. It points especially to Section 7 of the Act, 12 U.S.C.A. § 714: "It shall be the duty of the secretary-treasurer, acting under the direction of the national farm loan association, to collect, receipt for, and transmit to the Federal land bank payments of interest, amortization installments or principal arising out of loans made through the association"; and argues that this duty cannot be performed unless the association has the right to make the collections. The Bank points to the list of its powers in Section 13(3), 12 U.S.C.A. § 781(3), and among them "to empower national farm loan associations, or duly authorized agents, to collect and immediately pay over to said land banks the dues, interest, amortization installments and other sums payable under the terms, conditions, and covenants of the mortgages and of the bonds secured there-

by." It argues that if the associations have the right to collect and remit, there would be no need of the Bank's empowering them to do so. It points also to the amendment of Aug. 19, 1937, adding to Section 11 a fifth paragraph, 12 U.S.C.A. § 761(5): "Whenever a Federal land bank shall have empowered any national farm loan association of its district to collect and pay over to said bank the dues, interest, and amortization installments * * * from its shareholders, such association may, with the approval of said bank, enter into an agreement with another association operating in the same or adjacent territory to make such collections, for and on behalf of the association thus empowered to do so," etc. It argues that Congress has thereby emphasized the idea that the power to collect for the bank can only come by the consent of the bank.

█ We think the Bank's position is correct. The loans belong to the Bank, and it has the primary right and duty to collect them. The Association is not lender, but all its members are borrowers, and it is a guarantor of the debts. The Association has an important function in the making of the loans, and in maintaining debtor morale, and can have great usefulness both to its members and the Bank in keeping the payments going. It makes reports on the status of the loans and the securing lands, and is as guarantor no doubt entitled to information from the Bank, and may be active for its own protection in seeing that payments are promptly made. We think, however, the duty laid on the Secretary-treasurer of the Association to collect and remit is for the safety of the Association as guarantor, and for the convenience of the member borrowers. The Secretary-treasurer is under bond. Payments to him by the borrowers are not payments to the Bank until remitted, unless the Bank has empowered the Association to collect for it. If borrowers prefer to remit direct to the Bank, they may. If the Bank prefers, it may request direct payments, but cannot prevent the borrowers from paying through their Association if they wish to. That this is the relationship between the Bank and the Association is substantially ruled in Federal Land Bank v. Gaines, 290 U.S. 247, 54 S.Ct. 168, 78 L.Ed. 298. In that case it was "the duty of the secretary-treasurer * * * to pay over to borrowers all sums received for their account from the Federal land bank upon first mortgage", 12 U.

S.C.A. § 714, but the duty was held to be owing to the borrowing members of the Association, so that the Bank was not responsible for his default.

█ The Bank here had the undenied right to revoke the power it had given to the Association. We think it had the right to "empower its duly authorized agent" to collect for it, as the Act expressly provides. The request that borrowers pay this agent, unbuttressed by any threat or other misconduct, is no interference with any right of the Association, which may still busy itself with seeing that payment is made through itself or the agent. The Bank must accept payment if tendered through the Association. The injunction ought not to have been granted. The judgment is reversed and the cause remanded with direction to dismiss the complaint.

Reversed.